YMCA OF SAN ANTONIO, Appellant,

v.

John A. ADAMS and Jane A. Adams, Individually, and as Next Friend of Adam Adams, A Minor, Appellees.

No. 04–04–00931–CV.

Court of Appeals of Texas, San Antonio.

July 12, 2006.

Rehearing Overruled Oct. 13, 2006.

Rehearing En Banc Denied Feb. 7, 2007.

Marcella Algarra, Richard W. Espey, Davis, Cedillo & Mendoza, Inc., Nissa M. Dunn, Crofts & Callaway, P.C., San Antonio, for appellant.

Pat Maloney Sr., Pat Maloney, Jr., Law Offices of Pat Maloney, P.C., Curtis L. Cukjati, Martin & Cukjati, L.L.P., Thomas G. Kemmy, Law Office of Thomas G. Kemmy, San Antonio, for appellees.

Sitting: SARAH B. DUNCAN, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

John A. and Jane A. Adams (Adams), individually and as next friend of Adam Adams (hereinafter A.A.) sued YMCA of San Antonio (YMCA) for the negligent hiring, retaining, and supervising of Kenneth Trimble and obtained a favorable jury verdict.[1] The underlying suit stems from the sexually inappropriate conduct of Kenneth Trimble while employed at YMCA. In four issues, YMCA challenges the trial court's judgment claiming: (1) it is not liable for negligent hiring, retaining, and supervising because plaintiffs failed to secure a finding that Trimble committed a legally cognizable tort, (2) there was no evidence the YMCA could have foreseen Trimble's conduct, (3) there was legally and factually insufficient evidence that A.A. would suffer future mental anguish, and (4) because the jury found YMCA 5% and Trimble 95% responsible, the judgment should be proportionately modified.

---

1. In an effort to strike a fair balance between the sealing order in this case and our responsibilities as a court of record, this opinion retains references to and excerpts from the sealed portion of the record that pertain to the core controversy presented by the parties while concealing the identities of the parties subject to the order. *See R.V.K. v. L.L.K.,* 103 S.W.3d 612 (Tex.App.-San Antonio 2003, no pet.).

Because there is no evidence to support the jury's finding that A.A. will in reasonable probability suffer from future compensable mental anguish, we reverse the judgment of the trial court and render a take-nothing judgment in favor of appellants.

## BACKGROUND

YMCA owns and operates a summer camp for children known as Camp Flaming Arrow (CFA). Steven King, CFA's director, employed Kenneth Trimble as a camp counselor for the summer session of 1998 and 1999. In the spring of 2000, YMCA learned that Trimble had been arrested and confessed to molesting about 20 CFA campers during his employment at CFA. Trimble confessed he had sexually inappropriate contact with A. A.

A.A. testified that one night he awoke screaming and Trimble went over to check on him but got into his bed and was bumping him. Both A.A. and Trimble were fully clothed. Apparently, this was the only incident occurring between A.A. and Trimble. A. A.'s parents sued the YMCA alleging that its negligence in hiring, retaining, and supervising Trimble proximately caused A. A.'s injury. The case was submitted to a jury, which determined that: (1) Trimble intentionally or knowingly caused serious mental impairment or injury to A. A.; (2) the YMCA's negligence proximately caused the injury; (3) responsibility should be apportioned 95% to Trimble and 5% to the YMCA; and (4) A.A. sustained no past mental anguish but will in reasonable probability sustain $500,000 in future mental anguish damages. This appeal ensued.

### LEGAL AND FACTUALLY SUFFICIENCY OF FUTURE MENTAL ANGUISH

■ In issue number three, YMCA asserts that the jury's mental anguish dam-age findings were based upon factually and legally insufficient evidence. In reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding, except if the jurors could not disregard the contrary evidence. *See State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex.1998). The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When factual sufficiency of the evidence is challenged, we consider all of the evidence, both in support of and contrary to the challenged implied finding, and uphold the verdict unless it is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

■ The determination of damages for mental anguish is left to the discretion of the jury, however, the discretion is limited. *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996). To recover for mental anguish, Adams needed to show by direct evidence "the nature, duration, or severity of [A. A.'s] anguish, thus establishing a substantial disruption in [his] daily routine," or show by other evidence "a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Id.*

■ Damages for future mental anguish are recoverable if there is a "reasonable probability that the complainant will suffer from compensable mental anguish in the future." *Lubbock County v. Strube*, 953 S.W.2d 847, 857 (Tex.App.-Austin 1997, pet. denied). Additionally, there must be evidence that the award is fair and reasonable compensation. *Id.*

### A. Evidence of Mental Anguish

The jury heard the Adams' expert testify that A.A. was coping with the incident by not talking about it. This expert testified that sexual abuse robs a child of his innocence and of a natural progressive establishment of some type of normal sexuality with his own peers. The expert referred to several instances where A.A. exhibited abnormal outbursts as a sign of the effects of the incident: his emotional state when his parents asked about his experience at camp; the letter A.A. addressed to Trimble filled with profanity; A. A.'s failure in math class that, according to the expert, was a result of a phobic anxiety because the math teacher's conduct triggered memories of Trimble; and A. A.'s comments to his grandfather about his feelings towards Trimble. A. A.'s father testified that A.A. carries a deep shame. A.A. testified that he was angry at Trimble and that he would always remember the incident.

Importantly, this expert never met with A.A. and testified that she did not conduct a diagnosis or evaluation of A.A. A clinical psychologist, who met A.A. once, stated that A.A. was coping through denial and that A. A.'s symptoms may not surface until some time in the future. This psychologist testified that he did not conduct a "full or typical evaluation" or a diagnosis of A.A. In fact, on the one occasion the psychologist spent "about 10 to 15 minutes maximum with [A. A.], and about 45 minutes with the parents."[2] Further, he understood that the Adams were not asking for an evaluation of A.A. but rather simply to "talk to him and let [them] know how he is, how [he] see[s] him." In his report, the psychologist stated:

> [A.A.] is an articulate, cooperative youngster who appears his stated age.

He shows no overt signs of anxiety. He denies any history of depression and/or related symptoms. He had been diagnosed with ADHD when he was five to six years old and was on Adoral, five milligrams daily, up to the summer of 2000. Having recently talked to mother about the incident, [A.A.] says that he is more cautious about strangers when he is out and about. There is no appetite disturbance or sleep disturbance. Thoughts are clear, coherent, goal-directed. No signs of social withdrawal, irritability, et cetera.

He further stated, "at the moment that I saw him he was functioning well. [Although] [i]t doesn't mean that six months down the road or a year, five years, ten years down the road" the situation will not change.

The majority of this evidence, however, at best supports a claim for past mental anguish, a claim that the jury denied. Lacking was any testimony that there is a reasonable probability A.A. will suffer from compensable mental anguish in the future. Circumstantially, A. A.'s behavior and reactions are no evidence that there was a substantial disruption in A. A.'s daily routine or that A.A. suffered from a high degree of mental pain and distress. *See Saenz*, 925 S.W.2d at 614; *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444–45 (Tex. 1995). The expert's and psychologist's testimony amounts to a possibility or speculation that at some time in the future A. A.'s repressed hurt and feelings *may* surface. The psychologist's testimony was that some adults, not necessarily A. A., seek counseling for "depression, anxiety and issues surrounding their child abuse." Their testimony establishes only that it is a possibility, based on what they generally

---

**2.** According to the psychologist, this meeting was rushed and scheduled at the last minute before the Adams left the country.

know about child abuse, that A.A. may suffer from some form of mental anguish. However, this is no evidence that A.A. would in reasonable probability suffer compensable mental anguish. *Schaefer v. Tex. Employers' Ins. Assn.*, 612 S.W.2d 199, 204 (Tex.1980) (stating the evidence amounts to no evidence when the substance of the expert testimony raises only mere possibilities, speculation, and surmise). Here, the jurors were left to speculate about the existence of future compensable mental anguish.

### B. Presumption of Mental Anguish

■ Alternatively, primarily citing to *Parkway v. Woodruff*, 901 S.W.2d 434 (Tex.1995), Adams states that the law recognizes a presumption of mental suffering in cases involving disturbing events like in this case. Notably, all of the Adams' authorities refer to an inference of past mental anguish. *See Moore v. Lillebo*, 722 S.W.2d 683, 685 (Tex.1986); *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.1967); *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230 (Tex.App.-Texarkana 2005, no pet.). Essentially, Adams argues that even if there is no evidence of compensable mental anguish, the jury is allowed to infer, based on Trimble's sexually inappropriate conduct, that A.A. will in reasonable probability suffer future mental anguish. Under the particular facts of this case, we disagree.[3]

■ Although proof of a physical manifestation or injury is not always required, there must be some assurance of the genuineness of the mental anguish claim. *See Moore*, 722 S.W.2d at 685 (holding "[w]rongful death cases present another circumstance where the genuineness of a mental anguish claim obviates the physical manifestation requirement"). In this regard, *Parkway* does note that historically some types of disturbing injuries have supported an inference that the injury was accompanied by mental anguish. *Parkway*, 901 S.W.2d at 445. However, any presumption of mental anguish stems as a natural consequence of a serious injury or threat and thus discards the need for evidence of physical manifestation of mental anguish. *See id.* (noting, generally, events from which mental anguish can be implied consist of "a threat to one's physical safety or reputation" or involve "the death of, or serious injury to, a family member"); *Country Roads, Inc. v. Witt*, 737 S.W.2d 362, 365 (Tex.App.-Houston [14th Dist.] 1987, no writ) (stating mental anguish may be presumed where it is the natural consequence of the plaintiff's injury); *see also Moore*, 722 S.W.2d at 685 (stating "[o]ur decisions allowing mental anguish recovery without proof of physical manifestation recognize that mental anguish inheres in the nature of certain torts"); *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 252 (Tex.App.-Texarkana 2005, no pet.) ("Consistent

---

**3.** We note that our focus is only on the type of evidence required to support an inference of future mental anguish damages. Had the Adams presented some evidence from which the jury could reasonably infer that future compensable mental anguish is a natural byproduct of the event or injury in question we may have reached a different result. *See, e.g., Tex. & P. Ry. Co. v. Curry*, 64 Tex. 85, 1885 WL 7126 *2 (1885) (stating "it is contrary to common experience and the laws of man's existence and nature that any sane, healthy and robust person by physical injuries may be

made a cripple for life … without mental pain resulting from the changed condition"); *Country Roads, Inc. v. Witt*, 737 S.W.2d 362, 365 (Tex.App.-Houston [14th Dist.] 1987, no writ) (stating Texas law allows for a presumption of mental anguish where it is the natural consequence of the injury); *Waterman Lumber Co. v. Shaw*, 165 S.W. 127, 131 (Tex.Civ.App.-Texarkana 1914, writ ref'd) (holding that future mental and physical pain would be inferred as the natural consequence of the physical conditions described).

with [*Parkway*], the severity of Mrs. Penny's fatal injuries is probably sufficient, in and of itself, to support an inference that mental anguish accompanied those injuries.").

Here, the evidence presented and the jury's findings do not support the proposition that future mental anguish is a natural consequence of the event or injury that A.A. endured. As discussed earlier, the Adams' own experts are unsure if A.A. will ever suffer from some form of mental anguish much less compensable mental anguish. Further, while the jury found that Trimble intentionally or knowingly caused serious mental impairment or injury to A. A., they denied the Adams' claim for past mental anguish. We can only conclude that they did not find sufficient evidence of a compensable injury.

■ More importantly, the jury implicitly rejected the proposition that mental anguish is a natural consequence of the event or injury that A.A. endured. The presumption of mental anguish is based on the natural continuous effect of a particular event or injury. If based on this record, past mental anguish is not a natural consequence of the event or injury in question then the jury could not have concluded otherwise for future mental anguish.

Consequently, we are unable to conclude that *Parkway* mandates a presumption that A.A. will in reasonable probability suffer from future compensable mental anguish.[4] Because there is no evidence to support the jury's finding that A.A. would in reasonable probability suffer from future compensable mental anguish, we sustain YMCA's issue number three.

### Conclusion

Our conclusion as to issue number three is dispositive of this appeal. We therefore reverse the judgment of the trial court and render a take-nothing judgment on the Adams' negligent hiring, retaining, and supervising claim against YMCA.

Sitting: SARAH B. DUNCAN,[1] Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

Rehearing en banc denied.

### DISSENTING OPINION ON DENIAL OF MOTION FOR REHEARING EN BANC

Dissenting opinion by CATHERINE STONE, Justice, joined by ALMA L. LÓPEZ, Chief Justice.

The panel opinion in this case stands for the proposition that sexual assault of a

---

4. As it relates to the standard of proof for mental anguish, *Parkway* court stated:

[a]lthough we stop short of requiring this type of evidence in all cases in which mental anguish damages are sought, the absence of this type of evidence, particularly when it can be readily supplied or procured by the plaintiff, justifies close judicial scrutiny of other evidence offered on this element of damages.

At trial, over three years had passed since the testifying psychologist met with A.A. He testified that he was unaware of how A.A. was doing since his meeting. He also stated he was not asked to conduct a diagnosis or evaluation but that his recommendation was for the Adams "to watch out for [A. A.], to observe him as far as any change in his behavior

that would indicate that he was not functioning as well as they were used to seeing him function. And . . . if nothing arose, they wouldn't have [a] reason to take him to somebody." Yet, the Adams' argued A.A. physically manifested his mental anguish after meeting with the testifying psychologist. A. A., however, never visited a medical professional for a diagnosis or an evaluation. Further, no expert testified that within reasonable probability A.A. would suffer from future mental anguish.

1. Justice Duncan was a member of the panel which decided this case on original submission. Her last day in office was December 31, 2006, and she is no longer participating in this case.

child is not the type of disturbing event which supports a presumption that the child victim sustained or will sustain mental anguish. The opinion is based on a misapplication of Texas law and ultimately places on the child victim a heightened burden of proof. With great respect for my colleagues, but with disappointment that I could not disavow them of their views, I dissent from the majority's denial of Appellees' Motion for Rehearing En Banc.

The facts of this case are disturbing, but minimizing the facts with an overly discreet description does not change the reality of what actually happened. The reality is that a nine-year-old boy experiencing his first adventure of summer camp was sexually assaulted by his camp counselor. When A.A. awoke in the night screaming and distressed by a bad dream, his camp counselor, Kenneth Trimble, came to A.A.'s bed and climbed in bed with him. A.A. was dressed in loose-fitting boxers and a t-shirt. *Cf. YMCA of San Antonio v. Adams*, No. 04–04–00931–CV, 2006 WL 1895291, at *1 (Tex.App.-San Antonio July 12, 2006, no pet. h.) (describing Trimble and A.A. as "fully clothed"). Trimble ultimately admitted that he sexually molested A.A. by getting on top of A.A. and "dry humping" him. The only time A.A. acknowledged the event, he told his parents that Trimble began bumping him in the bed and bumped him so hard that he thought he was going to fall off the bed. There is no question that this conduct constitutes "sexually inappropriate contact," *id.*, but it is more aptly described as sexual assault. *See* TEX. PENAL CODE ANN. § 22.011 (Vernon Supp.2006).

The panel opinion concludes the evidence is legally insufficient to sustain the jury's award of damages for future mental anguish; in so doing the panel's analysis falls short. The starting point for the analysis is, in my opinion, a determination of whether to apply the long-recognized legal principle that some events are so "particularly upsetting or disturbing" that mental suffering is presumed to flow from such events. *See Parkway v. Woodruff*, 901 S.W.2d 434, 442 (Tex.1995). As the *Parkway* opinion illustrates, this principle was recognized even when the law generally did not favor recovery of mental anguish damages. *Id.* "Once the particularly disturbing events were proved by reference to objective phenomena or conditions, the law generally allowed the claimant's mental suffering to be presumed to flow from such events." *Id.* The court noted that assault is one of the oldest examples of this category of cases. *Id.*

In the instant case there is objective proof of the particularly disturbing event; Trimble confessed to the assault and A.A. acknowledged on one occasion that the assault took place. A.A.'s mental anguish damages flow from the assault—the classic type of event giving rise to presumed mental suffering. It is the nature of the disturbing event itself that "assures that the claimants will suffer mental injury." *Moore v. Lillebo*, 722 S.W.2d 683, 685 (Tex. 1986). In *Moore* the court held that the parents who filed suit for the wrongful death of their adult child were entitled to have the issue of mental anguish damages submitted to the jury "on the basis of the emotional impact suggested by the circumstances surrounding their loss." *Id.* at 686 (quoting with approval *Connell v. Steel Haulers, Inc.*, 455 F.2d 688, 691 (8th Cir. 1972)).

In the instant case, however, the panel first reviews the testimony of the expert and lay witnesses and concludes that this evidence at best supports damages for past mental anguish, but amounts to no more than mere speculation as to future mental anguish. The court concludes there was no

"testimony that there is a reasonable probability A.A. will suffer from compensable mental anguish in the future." *YMCA*, 2006 WL 1895291, at *3. That, however, is not a burden of proof placed upon a plaintiff who has suffered from a "particularly upsetting or disturbing event." *Parkway*, 901 S.W.2d at 442. In *Parkway* the Supreme Court attempted to clarify the level of proof required for recovery of mental anguish damages, noting the necessity of evidence of the nature, duration, and severity of the mental anguish. Importantly, however, the court stopped short "of requiring this type of evidence in all cases in which mental anguish damages are sought...." *Id.* at 444. The court reaffirmed the concept of presumed mental anguish in certain cases involving disturbing or shocking injuries, noting that such cases generally involved "qualifying events [that] have demonstrated a threat to one's physical safety...." *Id.* at 445. Sexual assault, especially of a child, surely falls within the ambit of a "particularly upsetting or disturbing event;" an event involving a "threat to one's physical safety." *Id.*

Accordingly, I believe the first error of the panel is its failure to analyze the case from the perspective of the disturbing event without reference to specific testimony of mental anguish. Under the presumption, mental anguish damages are presumed and recoverable. Evidence of the event provides the basis for recovery. It is society's understanding of the natural consequences that flow from the event that provides the jury with a basis for awarding mental anguish damages. *See Moore*, 722 S.W.2d at 686.

In addition to the panel's failure to properly apply the presumption of mental anguish damages, the panel erroneously concludes that there must be an award for past mental anguish damages in order for there to be compensable future mental anguish damages. This conclusion is based in part on the belief that the reported cases addressing the presumption of mental anguish damages "refer to an inference of past mental anguish." *YMCA*, 2006 WL 1895291, at *3. A review of the cited cases does not support this conclusion. Indeed, one of the cases does not even involve a recovery for future mental anguish damages, so there is no reference, implied or otherwise, to a required connection between past and future mental anguish damages. *See SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230 (Tex. App.-Texarkana 2005, no pet.).

Even if expert testimony were needed to justify an award of mental anguish damages, more than sufficient evidence was presented by Ann Burgess, Professor of Psychiatric Nursing at Boston College. Dr. Burgess holds a Ph.D. in Nursing Science and is a leading national expert on the traumatic effects of sexual abuse sustained by children. Dr. Burgess was not retained by the plaintiffs to diagnose or to treat A.A. and she specifically did not interview A.A. because he had provided only a very limited disclosure of what had happened to him and he did not appear ready to discuss the matter in detail. Dr. Burgess' testimony focused on: (1) the YMCA's conduct in hiring and retaining Kenneth Trimble as a camp counselor; and (2) the effects of sexual abuse on children and how A.A.'s conduct comported with frequently-observed responses of sexually abused children. As the trial court noted, Dr. Burgess was "going to talk about what ... this child abuse has meant to [A.A.]."

Dr. Burgess' testimony regarding the effects of the sexual abuse incident was based on her review of the depositions of A.A. and his parents; a letter A.A. wrote to Kenneth Trimble at his mother's suggestion so that he could express his feel-

ings about the incident; A.A.'s school and medical records; Trimble's statement and tape-recorded confession; and other documents regarding Trimble's pattern of sexual abuse. Based on this information, as well as on her expertise and more than 40 years experience in psychiatric nursing, Burgess testified she was not surprised that A.A. denied that he had been sexually assaulted. Burgess explained that children, particularly boys, have anxiety about sexual abuse and do not want others to know that they have been abused. For this reason, parents, and specifically A.A.'s parents, should not force their children to participate in therapy. Burgess noted that if A.A.'s parents forced him into therapy before he is ready to discuss the abuse it would recreate the dynamics that A.A. experienced when he was under the control of Trimble. She also stated that A.A.'s denial of the abuse is a common coping mechanism known as denial. A.A.'s denial was particularly evident in his use of an analogy in which he likened his experience with Trimble to a book that should be kept in a vault. Burgess testified that the analogy reveals that A.A. knows what happened, but he is not ready to talk about it; he has the experience in a vault where it is presently under his control. Similarly, the letter A.A. wrote to Trimble indicated denial as a method of coping with the trauma of what had happened to him.

Burgess also testified that one of the effects of sexual abuse is that the child is robbed of the natural progressive development of normal sexuality with their peers; the loss of such innocence was evident in A.A.'s letter to Trimble. Another effect of such abuse can be poor performance in school, as experienced by A.A. in math. In that particular class, Burgess noted that the math teacher, a male, was reportedly inappropriate in class by snapping girls' bras and slapping boys on their backsides. Burgess opined that A.A.'s failure in this class was brought about in part by A.A.'s phobic anxiety—the math teacher produced fear in A.A. and reminded him of what had happened with Trimble.

Dr. Burgess testified that the effects of sexual abuse do not simply "go away." The only way to make them go away therapeutically is to provide "enough treatment with a person to ... process what has happened, so that the [victim] can consciously file it away as a memory...." It is not uncommon for sexually abused children to repress the related hurt and emotions for many years until a triggering event produces an enormous reaction. She specifically cited to the experience of men in their 40s beginning to recall being abused by clergy when they were young boys. The important fact noted by Dr. Burgess, however, is that the ill effects of the abuse cannot simply go away, the experience must be processed in some fashion when the victim is ready to do so.

Dr. Burgess' testimony provided the jury with support for mental anguish damages. Her testimony, coupled with the testimony of A.A.'s parents and grandfather about the range of A.A.'s conduct—from shutting down in silence, to violent outbursts, to visceral sobbing—presented a record from which the jury could have found damages for mental anguish damages. The jury did award damages for future mental anguish, but it did not do so for mental anguish suffered in the past. However, the jury's failure to award damages for past mental anguish is not, as the panel opinion states, an implicit rejection of "the proposition that mental anguish is a natural consequence of the event or injury that A.A. endured." *YMCA*, 2006 WL 1895291, at *4. Rather, the jury could have determined from Dr. Burgess' testimony that A.A. is currently coping with the trauma of the assault by denial, but that at some point in the future he will face dark

days when the vault is opened and the "book" of his experience is once again opened. Quite simply, the jury had evidence before it from which it could conclude that A.A. is not yet in need of or ready for therapy, but the day will come when he both needs and desires treatment, and then he will begin to process the trauma of the assault.

The panel opinion fails to properly apply the presumption of mental anguish that arises from the disturbing event of sexual assault of a child. The opinion also places an improper burden of proof on the child and ignores testimony that in fact supports the jury's award of damages. Therefore, I dissent.